UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jeffrey Perry, | No. 2:22-cv-00063-KJM-KJN |
| Plaintiff, | ORDER |
| v. | |
| Costco Wholesale Corporation, | |
| Defendant. | |

As explained in this order, undisputed evidence shows this court lacks original jurisdiction over plaintiff Jeffrey Perry's claim under the Americans with Disabilities Act (ADA). For that reason, the court cannot exercise supplemental jurisdiction over Perry's related claims under state law, and this action is **dismissed for lack of jurisdiction**.

**I.   BACKGROUND**

Costco Wholesale Corporation operates warehouse membership clubs throughout the United States, including in Roseville, California. Graydon Decl. ¶ 2, Def.'s Ex. A, ECF No. 15-1. In late 2021, the general manager of Costco's Roseville store was growing concerned about an uptick in shoplifting, break-ins, and "smash and grab" crimes nearby. *Id.* ¶ 9. He asked Costco's third-party private security service to send officers to patrol the store's parking lot. *Id.*

Perry was a former Costco employee at the time. Pl.'s Resp. Interrog. at 2, Def.'s Ex. B, ECF No. 15-1. He also shopped at the store regularly. *See* Perry Decl. ¶¶ 7–9, ECF No. 16-2. A

1

1  back injury makes it painful and exhausting for him to walk, stand and bend over, so he uses the
2  store's accessible parking spaces and aisleways. *See id.* ¶¶ 2–5. After Costco asked its private
3  security service to patrol the parking lot, Perry often saw patrol cars parked in the access aisle,
4  blocking it. *Id.* ¶¶ 5–6, 10; *see also* Def.'s Ex. C, ECF No. 15-1 (photograph of security car in
5  access aisle). Perry once asked a guard to move, but despite that request, guards still blocked the
6  aisle several times. *See* Perry Decl. ¶¶ 7–9.

7  Although Perry did not contact the store's general manager or another Costco employee
8  directly, the store's general manager noticed independently that patrol cars were parking in the
9  store's accessible spaces and aisles. Graydon Decl. ¶ 11. He instructed the guards to keep the
10  spaces and aisles clear. *Id.* Perry did not encounter any patrol cars in the aisleways after the store
11  manager instructed guards to keep the spaces and aisles clear. *See* Pl.'s Resp. Interrog. at 5–6;
12  Perry Decl. ¶ 9.

13  About a month after the last time he saw patrol cars blocking the access aisles, Perry filed
14  his complaint in this case. *See generally* Compl., ECF No. 1. He alleged Costco had denied him
15  equal access to public accommodations in violation of the ADA. *See id.* ¶¶ 14–24. He also
16  asserted claims under California's Disabled Persons Act and Unruh Civil Rights Act, invoking
17  this court's supplemental jurisdiction over those claims under 28 U.S.C. § 1367. *See id.* ¶¶ 4–5,
18  25–47. He seeks attorney fees, costs, and injunctive relief under the ADA, and he seeks damages
19  under state law. *See id.* at 8 (Prayer for Relief). Costco now moves for summary judgment, and
20  the motion is fully briefed. *See generally* Mot., ECF No. 15; Mem., ECF No. 15-2; Opp'n, ECF
21  No. 16; Reply, ECF No. 20. The court held a hearing on September 1, 2023. Bryce Fick
22  appeared for Perry, and Charles Valente appeared for Costco.

23  **II.   DISCUSSION**

24  In general, summary judgment is appropriate if "there is no genuine dispute as to any
25  material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A
26  dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party."
27  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect
28  the outcome of the suit under the governing law." *Id.* The parties must cite "particular parts of

1   materials in the record." Fed. R. Civ. P. 56(c)(1). The court then views the record in the light
2   most favorable to the nonmoving party and draws reasonable inferences in that party's favor.
3   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H.*
4   *Kress & Co.*, 398 U.S. 144, 157 (1970).

5   These general rules apply just as well to a defendant's argument that the court lacks
6   jurisdiction to hear the case. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). If a
7   defendant challenges the court's jurisdiction in a motion for summary judgment, the plaintiff
8   "must set forth by affidavit or other evidence specific facts" that, if true, would show the court
9   has jurisdiction. *Id.* (citation and quotation marks omitted). If the plaintiff does not meet that
10  requirement, the court cannot adjudicate the plaintiff's claims; it has no power to do so. *See Steel*
11  *Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). Federal courts also have an
12  independent obligation to ensure they have subject matter jurisdiction, even if no party raises the
13  issue. *See* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).
14  For these reasons, the court begins by ensuring it has jurisdiction to adjudicate Perry's claims,
15  starting with his claim under the ADA.

16  The Constitution limits federal courts to "Cases" and "Controversies." U.S. Const. art. III,
17  § 2. The Supreme Court has interpreted that limitation as imposing three requirements on all
18  plaintiffs who seek relief in federal courts: they must have suffered an "injury in fact" that is
19  "fairly traceable" to the defendant's conduct, and that injury must be "likely to be redressed by a
20  favorable judicial decision." *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 337–38 (2016). Plaintiffs
21  must satisfy these requirements "for each claim" and "each form of relief sought."
22  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (quoting *Friends of the Earth, Inc. v.*
23  *Laidlaw Envt'l Servs.* (*TOC*)*, Inc.*, 528 U.S. 167, 185 (2000)). When a court determines whether
24  it has jurisdiction, it considers the circumstances at the time the complaint was filed. *See Steel*
25  *Co.*, 523 U.S. at 106–07; *Lujan*, 504 U.S. at 569 n.4.

26  Injunctive relief is the sole remedy available to private plaintiffs who assert ADA claims,
27  so they must show they had standing to seek an injunction at the time the complaint was filed.
28  *See Arroyo v. Rosas*, 19 F.4th 1202, 1205–06 (9th Cir. 2021); *Fortyune v. Am. Multi-Cinema,*

*Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). To have standing to seek an injunction, plaintiffs must show there is "a sufficient likelihood that [they] will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). They cannot rely solely on "past wrongs," *id.* at 103, although a past wrong may serve as evidence of a "real and immediate threat of repeated injury," *id.* at 102 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Plaintiffs must cite evidence in addition to those past wrongs, such as a written policy. *See Fortyune*, 364 F.3d at 1081–82. These rules echo the more general requirement that plaintiffs must show a "threatened injury" is "certainly impending" and cannot rely on "allegations of possible future injury." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (emphasis and alterations omitted) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

Under the Supreme Court's decisions, these rules can be exacting. In *Lyons*, for example, the Supreme Court held a man did not have standing to seek an injunction against unconstitutional police chokeholds even though he alleged the police had choked him without provocation only a few months before. *See* 461 U.S. at 97–98, 101, 105. The Supreme Court found his allegations "did not indicate why [he] might be realistically threatened by police officers" in the future. *Id.* at 106.

The Supreme Court has recognized a second, independent jurisdictional limit in the Constitution's references to cases and controversies, which the parties debate in their briefs. *See* Mem. at 15; Opp'n at 6; Reply at 5–6. Not only must the plaintiff identify a concrete injury at the beginning of the case; an "actual controversy" must persist through "all stages" of the litigation as well. *See Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citations omitted). But "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Id.* "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* In that situation, a defendant must make "absolutely clear

4

that the alleged wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). This exception to mootness is commonly known as the "voluntary cessation" doctrine. *See, e.g.*, *Already*, 568 U.S. at 92.

These two jurisdictional requirements—standing and mootness—can seem to intertwine, which can lead to potentially confusing results. For several years the Supreme Court itself described mootness as "standing set in a time frame" only to later abandon that description as "not comprehensive" after more "[c]areful reflection." *Friends of the Earth*, 528 U.S. at 190. Parties sometimes incorrectly tangle up the voluntary cessation doctrine with the standing requirement. In *Steel Co.*, for example, the United States, acting as *amicus curiae*, urged the Supreme Court to find it had jurisdiction because the defendant might repeat past offenses even though the defendant had stopped before the complaint was filed. *See* 523 U.S. at 109. The Supreme Court disagreed. It is true that a defendant cannot easily escape a federal court's jurisdiction if the case was live at the time it began. *Id.* But if the case was dead from the start, a plaintiff may not rely on supposition about future violations of the law. *See id.*

These jurisdictional rules are abstract and sometimes difficult to square, but applying them in this case is a straightforward exercise. This court cannot hear Perry's ADA claim unless either (1) there was an ongoing ADA violation at the time the complaint was filed or (2) at that time, a real and immediate threat of a future violation was looming. If it is undisputed there was an ongoing ADA violation at the time the complaint was filed, then Costco could moot the case only by making absolutely clear the violation could not reasonably be expected to reoccur. But if it is undisputed that Costco had remedied the alleged ADA violation before Perry filed his complaint, then Perry would not have standing unless the record establishes a real and immediate threat of repeated injury. In the second situation, the voluntary cessation doctrine would be irrelevant.

Costco has offered undisputed evidence that its store manager noticed security guards were parking in the aisles leading to its accessible parking spots before Perry filed his complaint and instructed guards to keep those parking spots and aisles clear. *See* Graydon Decl. ¶ 11. Costco also has offered undisputed evidence that Perry did not see any guards blocking the access

aisles after the store manager gave this instruction. *See* Pl.'s Resp. Interrog. at 5–6; Perry Decl. ¶ 9. Perry has not cited a Costco policy or other evidence that could show Costco's private security guards will likely block access aisles in the future. Under *Lyons*, he cannot rely on past violations alone. And under *Steel Co.*, he cannot rely on the voluntary cessation doctrine, which Costco disclaims expressly as a defense in any event. *See* Mem. at 15. Perry does not have standing to pursue his claim under the ADA. This court and other federal district courts within the Ninth Circuit have reached similar conclusions in similar cases. *See, e.g.*, *Gastelum v. Burlington Stores, Inc.*, No. 21-08639, 2022 WL 4625122, at *5 (N.D. Cal. Sept. 30, 2022) (no access barrier at time complaint filed); *Hubbard v. SEIU Loc. 2015*, 552 F. Supp. 3d 955, 959–60 (E.D. Cal. 2021) (challenged action stopped before plaintiff filed complaint), *aff'd*, No. 21-16408 2023 WL 6971463 (9th Cir. Oct. 23, 2023); *Stoia v. Yee*, No. 22-01760, 2021 WL 3847725, at *2–3 (E.D. Cal. Aug. 27, 2021) (same), *appeal dismissed*, No. 21-16597, 2022 WL 4564130 (9th Cir. Apr. 29, 2022).

Perry also asserts two claims under California law, relying on this court's supplemental jurisdiction and 28 U.S.C. § 1367. Under that section, if a federal district court has "original jurisdiction," it may exercise "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The "plain language" of this section "makes clear that supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 805 (9th Cir. 2001). As a result, if a federal district court lacks original jurisdiction, it has no discretion to retain supplemental jurisdiction over any related claims. *Id.* at 807. "Regrettably, questions of time, cost, and efficiency do not undergird jurisdiction." *Id.* The court must dismiss the case even if the parties have completed discovery or even a trial and appeal. *Id.*

This court does not have original jurisdiction over Perry's ADA claim, and he does not invoke this court's original jurisdiction over his state law claims. Nor has he offered allegations or evidence to show this court has original jurisdiction over his state law claims. This court must

therefore dismiss the action in its entirety. *See, e.g.*, *Scott v. Pasadena Unif. Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) ("[W]e have determined that the district court lacked subject matter jurisdiction. Thus, we have no discretion to retain supplemental jurisdiction over [the] state law claims."); *Gastelum*, 2022 WL 4625122, at *9 (dismissing Unruh Act claims after finding no original jurisdiction over ADA claims).

### III. CONCLUSION

This action is **dismissed without prejudice for lack of subject matter jurisdiction**. This order resolves ECF No. 15 and **closes the case**.

IT IS SO ORDERED.

DATED: October 26, 2023.

CHIEF UNITED STATES DISTRICT JUDGE